**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
**RHONDA GRIBENSK,**

      **Plaintiff,**
   v.                                                              **8:15-cv-395**

**CAROLYN W. COLVIN,**
**Acting Commissioner of Social Security,**

      **Defendant.**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**THOMAS J. McAVOY**
**Senior United States District Judge**

## DECISION and ORDER

Plaintiff Rhonda Gribensk brought this suit under § 205(g) of the Social Security Act ("Act"), as amended, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income ("SSI") benefits. Plaintiff alleges that the decision of the Administrative Law Judge ("ALJ") is not supported by substantial evidence and is contrary to the applicable legal standards. Pursuant to Northern District of New York General Order No. 8, the Court proceeds as if both parties had accompanied their briefs with a motion for judgment on the pleadings.

**I.    PROCEDURAL HISTORY**

Plaintiff protectively filed an application for SSI benefits on May 24, 2011 (Tr. 244-51, 302). The application was denied (Tr. 143-44, 148-53). Plaintiff requested a hearing before an Administrative Law Judge (ALJ) (Tr. 163-66). A hearing was adjourned on December 12, 2012 (Tr. 85-96) and held on July 8, 2013 (Tr. 97-128). On September 23, 2013, ALJ

1

Arthur Patane issued a decision finding that Plaintiff was not disabled (Tr. 42-59). Plaintiff requested review by the Appeals Council (Tr. 40-41 ). The decision of the ALJ became the final decision of the Commissioner when the Appeals Council denied Plaintiff's administrative appeal on February 5, 2015 (Tr. 1-7). This action followed.

## II. FACTS

The parties do not dispute the underlying facts of this case as set forth by Plaintiff in her memorandum of law. Accordingly, the Court assumes familiarity with these facts and will set forth only those facts material to the parties' arguments.

## III. THE COMMISSIONER'S DECISION

Plaintiff protectively filed her SSI application on May 24, 2011 alleging disability since January 15, 2011 due to chronic obstructive pulmonary disease (COPD), depression, migraines, and abdominal pain (Tr. 302, 306). At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her application date of May 1, 2011 (Tr. 47). At step two, the ALJ found that Plaintiff had severe post-traumatic stress disorder (PTSD), depressive disorder, anxiety disorder, asthma, COPD, and recurrent migraines (Tr. 47- 50). The ALJ found that Plaintiff's alleged gynecological conditions, somatizations, and back and left leg problems were not severe impairments (Tr. 48-50).

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 50-52). The ALJ then found that Plaintiff retained the residual functional capacity to perform a range of light work as defined in 20 C.F.R. §

2

416.967(b) in that she could remember, understand, and execute simple work tasks, maintain attention and concentration for such work tasks, respond appropriately to changes and stressors in concert with simple work tasks, and interact frequently with coworkers and supervisors, but she could have no contact with the general public, and she could have no concentrated exposure to respiratory irritants (Tr. 52-57).[1]

At step four, the ALJ found that Plaintiff had no past relevant work (Tr. 57). The ALJ used medical-vocational Rule 202.17 as a framework to conclude that Plaintiff's residual functional capacity permitted her to perform a significant number of other jobs (Tr. 58-59). Therefore, the ALJ found that Plaintiff was not disabled within the meaning of the Act (Tr. 34).

Plaintiff challenges these findings in various respects. The Commissioner argues that the ALJ's decision is supported by substantial evidence and legally correct and, therefore, should be affirmed.

## IV.   STANDARD OF REVIEW

The Court's review of the Commissioner's determination is limited to two inquiries. See 42 U.S.C. § 405(g). First, the Court determines whether the Commissioner applied the correct legal standard. See Tejada v. Apfel, 167 F.3d 770, 773 (2d Cir. 1999); Balsamo v. Chater, 142 F.3d 75, 79 (2d Cir. 1998); Cruz v. Sullivan, 912 F.2d 8, 11 (2d Cir. 1990); Shane v. Chater, No. 96-CV-66, 1997 WL 426203, at *4 (N.D.N.Y July 16, 1997)(Pooler, J.)(citing Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987)). Second, the Court must

---

[1] Light work involves lifting no more than twenty pounds at a time with frequent lifting and carrying of objects weighing up to twenty pounds. 20 C.F.R. § 416.967(b ). Light work requires a good deal of walking and standing, or sitting most of the day with some pushing and pulling of arm or leg controls. 20 C.F.R. § 416.967(b).

3

determine whether the Commissioner's findings are supported by substantial evidence in the administrative record. See Tejada, 167 F.3d at 773; Balsamo, 142 F.3d at 79; Cruz, 912 F.2d at 11; Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982). A Commissioner's finding will be deemed conclusive if supported by substantial evidence. See 42 U.S.C. § 405(g); see also Perez, 77 F.3d at 46; Townley v. Heckler, 748 F.2d 109, 112 (2d Cir. 1984)("It is not the function of a reviewing court to determine *de novo* whether a Plaintiff is disabled. The [Commissioner's] findings of fact, if supported by substantial evidence, are binding.")(citations omitted). In the context of Social Security cases, substantial evidence consists of "more than a mere scintilla" and is measured by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed.2d 842 (1971)(quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S. Ct. 206, 217, 83 L. Ed. 126 (1938)). Where the record supports disparate findings and provides adequate support for both the Plaintiff's and the Commissioner's positions, a reviewing court must accept the ALJ's factual determinations. See Quinones v. Chater, 117 F.3d 29, 36 (2d Cir. 1997)(citing Schauer v. Schweiker, 675 F.2d 55, 57 (2d Cir. 1982)); Alston v. Sullivan, 904 F.2d 122, 126 (2d Cir. 1990). Although the reviewing court must give deference to the Commissioner's decision, a reviewing court must bear in mind that the Act is ultimately "'a remedial statute which must be 'liberally applied;' its intent is inclusion rather than exclusion.'" Vargas v. Sullivan, 898 F.2d 293, 296 (2d Cir. 1990)(quoting Rivera v. Schweiker, 717 F.2d 719, 723 (2d Cir. 1983)).

## V. DISCUSSION

Plaintiff offers several grounds for challenging the opinion of the ALJ. For reasons explained below, the Court will address some but not all of these grounds.

### a. Whether Plaintiff's mental impairments meet the requirement of § 12.04 and/or § 12.06 of the Listing of Impairments

Plaintiff argues that her mental impairments meet the requirements of §12.04 (Affective Disorders) and/or §12.06 (Anxiety Related Disorders) of the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. Pl. Mem. at 25-27. The Commissioner disagrees and asserts that the ALJ correctly evaluated Plaintiff's mental condition under the Social Security regulations and found that the requirements of neither § 12.04 nor § 12.06 were met or equaled. Def. Mem. at 5-7 (citing Tr. 50-52).

The impairments contained in the Listing of Impairments "are impairments acknowledged by the Secretary to be of sufficient severity to preclude gainful employment. If a claimant's condition meets or equals the 'listed' impairments, he or she is conclusively presumed to be disabled and entitled to benefits." Dixon v. Shalala, 54 F.3d 1019, 1022 (2d Cir.1995). Whether a claimant's impairment meets or equals a listed impairment is decided at the third step of the sequential evaluation. Id.

In addressing listed impairments, the applicable section of the Code of Federal Regulations provides:

> Each listing, except 12.05 and 12.09, consists of a statement describing the disorder(s) addressed by the listing, paragraph A criteria (a set of medical findings), and paragraph B criteria (a set of impairment-related functional limitations). There are additional functional criteria (paragraph C criteria) in 12.02, 12.03, 12.04, and 12.06, discussed herein. We will assess the paragraph B criteria before we apply the paragraph C criteria. We will assess the paragraph C criteria only if we find that the paragraph B criteria are not

5

satisfied. We will find that you have a listed impairment if the diagnostic description in the introductory paragraph and the criteria of both paragraphs A and B (or A and C, when appropriate) of the listed impairment are satisfied.

20 C.F.R. § Pt. 404, Subpt. P, App. 1

As indicated above, the ALJ found that Plaintiff had severe post-traumatic stress disorder (PTSD), depressive disorder, anxiety disorder, asthma, COPD, and recurrent migraines (Tr. 47- 50). The Commissioner makes no argument that Plaintiff fails to satisfy the paragraph A criteria for §12.04 (Affective Disorders) and §12.06 (Anxiety Related Disorders).

To satisfy the paragraph B criteria for §12.04 and/or §12.06, Plaintiff must show that her mental impairment resulted in at least two of the following: 1. Marked restriction of activities of daily living; 2. Marked difficulties in maintaining social functioning; 3. Marked difficulties in maintaining concentration, persistence or pace; or 4. Repeated episodes of decompensation, each of extended duration. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04(B), § 12.06(B). A "marked" limitation means "more than moderate, but less than extreme;" one that "interferes seriously with [a claimant's] ability to function independently, appropriately, effectively, and on a sustained basis." Gagnon v. Comm'r of Soc. Sec., 2016 WL 482068, at *4 (N.D.N.Y. Feb. 5, 2016)(quoting 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(c)). "Repeated" episodes of decompensation, means "three episodes within [one] year, or an average of once every [four] months, each lasting for at least [two] weeks" or "more frequent episodes of shorter duration or less frequent episodes of longer duration" which are determined, in an exercise of judgment, to be "of equal severity." Id. (quoting 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(C)(4)).

Based on Plaintiff's hearing testimony and written statements, and relying primarily

6

on the opinion of state agency non-examining psychiatric consultant H. Ferrin, Ph.D., the ALJ determined that Plaintiff had mild restriction in activities of daily living; moderate difficulties in social functioning; moderate difficulties with regard to concentration, persistence or pace; and had experienced no episodes of decompensation which had been of extended duration (Tr. 50–56). The ALJ also found no evidence to establish the presence of "Paragraph C" criteria (id.).

Plaintiff points out, however, that after the hearing she submitted to the Appeals Council (1) a November 21, 2013 Medical Source Statement from her treating psychiatrist, Dr. Joshua Frank, and (2) a March 21, 2014 Medical Examination for Employability Assessment completed by Dr. Frank for the Department of Social Services. In the Medical Source Statement, Dr. Frank assessed Plaintiff with marked impairments in understanding and remembering simple instructions and carrying out simple instructions; extreme impairment in the ability to make judgments on simple work related instructions, understanding and remembering complex instructions, carrying out complex decisions, and making judgments on complex decisions; and extreme restrictions in interacting appropriately with the public, interacting appropriately with supervisors, interacting appropriately with co-workers, and responding appropriately to usual work situations and to changes in a routine work setting. (Tr. 1274). Dr. Frank assessed: "Labile mood, increased anxiety when dealing with people, avoidance due to PTSD." Id. He concluded: "Very poor tolerance for any stress which makes it impossible for her to work in a regular work schedule." Id.

On Plaintiff's administrative appeal, the Appeals Council said that it considered the "additional evidence" which Plaintiff submitted, Tr. 1, but addressed only Dr. Frank's March

7

21, 2014 Department of Social Services' Medical Examination for Employability Assessment. Id. 2.² In this regard, the Appeals Council wrote:

> We . . . looked at Medical records for Joshua Frank of Medical Examination for Employability Assessment, Disability Screening and Alcoholism/Drug Addiction Determination dated March 21, 2014. The Administrative Law Judge decided your case through September 23, 2013. This new information is about a later time. Therefore, it does not affect the decision about whether you were disabled beginning on or before September 23, 2013.

Id.

The Commissioner argues that Dr. Frank's Medical Source Statement was dated two months after the ALJ's September 23, 2013 decision, and that Dr. Frank said that the date on which these limitations were first present was unknown (Tr. 1274). Thus, the Commissioner asserts, "there was no evidence that the limitations that Dr. Frank assessed in November 2013 had been present on or before the ALJ's September 23, 2013 decision." Def. Mem. at 7. Plaintiff argues that although Dr. Frank stated that he did not know when Plaintiff's symptoms first started, his opinions raise "the strong implication that they existed when [Dr. Frank] started treating [Plaintiff] in March 2013." Pl. Mem. at 27. (citing Tr. at 1274).

A claimant is expressly authorized to submit new and material evidence to the Appeals Council. Perez v. Chater, 77 F.3d 41, 44 (2d Cir. 1996)(citing 20 C.F.R. §§ 404.970(b), 416.1470(b)). If this new evidence relates to the time period before the ALJ's decision, the Appeals Council is required to evaluate the entire record, including the new evidence, to determine if the ALJ's action, findings, or conclusions are contrary to the weight of the evidence currently of record. Id.; see Rivera v. Sullivan, 923 F.2d. 964, 967

---

²The Appeals Council did include Dr. Frank's November 21, 2013 Medical Source Statement in the record, Tr. 6, but did not reference it in its decision. Id. at 2.

(2d Cir. 1991) (recognizing that post hearing medical examinations may be admitted under 20 C.F.R. § 404.970(b) when these examinations assist in understanding a claimant's pre-hearing disability); Woodford v. Apfel, 93 F. Supp.2d 521, 526-527 (S.D.N.Y. 2000)(When a claimant presents evidence that meets § 404.970(b)'s standards, the Appeals Council will admit the evidence into the record, and review the entire record to determine whether the ALJ's decision is contrary to the weight of the evidence.).

Although Dr. Frank's opinion in the November 21, 2013 Medical Source Statement is ambiguous as to the date that Plaintiff's symptoms started, based on the evidence at the hearing indicating that Plaintiff had been consistently treated for her depression since 2008, and that, in April 2013, Dr. Frank gave her a GAF score of 45, it is possible that the symptoms started before the ALJ's September 23, 2013 determination. Assuming this to be the case, Dr. Frank's opinions rendered in the November 21, 2013 Medical Source Statement are material to the determination of whether Plaintiff satisfies the paragraph B criteria for §12.04 and/or §12.06. See Clark v. Commissioner of Soc. Security, 143 F.3d 115, 118 n. 1 (2d Cir. 1998)(noting that material evidence is that which is relevant to the time period for which benefits were denied, even if made after that time); Lisa v. Sec'y HHS, 940 F.2d 40, 43 (2d Cir. 1991)(Evidence is "material" if there is "a reasonable possibility that the new evidence would have influenced the Secretary to decide claimant's application differently."). Moreover, the evidence from Dr. Frank in his November 21, 2013 Medical Source Statement, when given the appropriate weight under the treating physician rule, see

Ross v. Colvin, 2014 WL 5410327, at *12 (N.D.N.Y. Oct. 21, 2014),[3] and when read together with the totality of the evidence presented at the hearing,[4] had the potential to change the ALJ's determination as to whether Plaintiff satisfies the paragraph B criteria for § 12.04 or §12.06 of the Listing of Impairments.

Because the Appeals Council is obligated to fully review the record, including new evidence submitted to it, and to develop the record to fill any gaps that might exist, see Sims v. Apfel, 530 U.S. 103, 111 (2000); see also Anderson v. Astrue, 2009 U.S.Dist. LEXIS 77602, * 43 (E.D.N.Y. 2009)("The Appeals Council, like the ALJ, has an affirmative duty to develop the record"); Valerio v. Commissioner of Social Security, 2009 U.S.Dist. LEXIS 68634, * 46 (E.D.N.Y. 2009)("Given the ALJ's duty to develop the record *sua sponte*,

---

[3]("The medical opinions of a claimant's treating physician are generally given more weight than those of other medical professionals. 'If ... a treating source's opinion ... is well-supported by medically acceptable clinical and laboratory techniques and is not inconsistent with other substantial evidence ... [it] will [be] give[n] controlling weight.' 20 C.F.R. § 404.1527(c)(2). Medically acceptable techniques include consideration of a patient's report of complaints and the patient's history as essential diagnostic tools. Green–Younger v. Barnhart, 335 F.3d 99, 107 (2d Cir. 2003). Generally, the longer a treating physician has treated the claimant and the more times the claimant has been seen by the treating source, the more weight the Commissioner will give to the physician's medical opinions. Burgess v. Astrue, 537 F.3d 117, 129 (2d Cir. 2008) (citing 20 C.F.R. § 404.1527(c)(2)(i)).")

[4]This included evidence that examining psychiatric consultant Richard Liotta, Ph.D., concluded that Plaintiff was significantly limited in social functioning; had difficulty sustaining focus, concentration, and ability to attend; had problems with her memory; had a low stress tolerance; and was at risk of decompensation. Further, Dr. Liotta performed objective neuropsychological tests and determined that Plaintiff had marked impairments in concentration and persistence Tr. 894. Although the ALJ "afforded little consideration to the diagnoses" of Dr. Liotta because they "were made after only a single consultive evaluation, the diagnoses almost entirely rely on subjective reports not borne out in mental status evaluation, and the subjective reports on which the diagnoses were made were not reflected in mental health treatment notes several months thereafter," Tr. 55, this weight determination might change if Dr. Frank's post-hearing opinions are deemed to involve the relevant time period. See 20 C.F.R. § 416.927(c)(4) (noting that the more consistent an opinion is with the record as a whole, the more weight it will be given)(emphasis added).
Plaintiff also points out that she has been consistently treated for her depression since 2008, and that she submitted post-hearing evidence indicating that in April 2013, Dr. Frank gave her a GAF score of 45, (Tr. 12), thus indicating "'serious symptoms,' including suicidal ideation, severe obsessional rituals, or a serious impairment in social, occupational, or school functioning, such as 'no friends' or inability to keep a job." Truman v. Comm'r of Soc. Sec., 2015 WL 5512225, at *13 (N.D.N.Y. Sept. 17, 2015) (citing Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders ("DSM–IV"), at 32 (4th ed. 2000)).

10

the Appeals Council may not reject the treating physician's conclusions based solely on a lack of clear medical evidence or inconsistency without first attempting to fill the gaps in the administrative record."); Boyd v. Apfel, 1999 U.S. Dist. LEXIS 18510, * 12 (E.D.N.Y. 1999)("Where the record before the Appeals Council, including new evidence, is ambiguous or incomplete, the Appeals Council has an affirmative obligation to develop it further." ), the case must be remanded for further development of the record in this regard. See Sears v. Colvin, 2013 U.S. Dist. LEXIS 175513, *13- *15 (N.D.N.Y. 2013)("If the Appeals Council fails to consider new, material evidence, the proper course for the reviewing court is to remand the case for reconsideration in light of the new evidence.")(interior quotation marks and citation omitted).  In remanding this case, the Court offers no opinion on whether Plaintiff satisfies the criterion for § 12.04 or §12.06 of the Listing of Impairments,[5] or the manner in which the Commissioner might expand the record.[6]

## b.  Whether Plaintiff is a disabled by a Somatoform Disorder

Plaintiff also argues that her mental impairment meets § 12.07 of the Listing of Impairments (Somatoform Disorders). Pl. Mem. at 28-31.  The Commissioner disagrees.

---

[5]Because it is possible that Commissioner could still conclude that, based upon Plaintiff's testimony and written statements, she does not satisfy the paragraph B criteria, the Court rejects Plaintiff's argument that "[t]his Court should determine that [Plaintiff] is disabled pursuant by her depression and anxiety and remand for payments of benefits." Pl. Mem. pp 27-28.

[6]The Appeals Counsel could have recontacted Dr. Frank to obtain more information as to when he believed the symptoms first started.  However, the Court recognizes that such recontacting was not *required.* In 2012, prior to the adjudication of Plaintiff's claim, the regulations were amended to remove the requirement that an Commissioner recontact the treating physician. See How We Collect and Consider Evidence of Disability, 77 Fed. Reg. 10,651, 10,656 (Feb. 23, 2012) (codified at 20 C.F.R. §§ 404.1512, 404.1527, 404.912, and 416.927).  Moreover, even under the previous regulations, recontacting was required only where the Commissioner did not have adequate evidence to determine whether the claimant was disabled. 20 C.F.R. § 404.1512(e) (2010) (amended March 26, 2012) ("When the evidence we receive from your treating physician or psychologist or other medical source is inadequate for us to determine whether you are disabled, we will need additional information to reach a determination or a decision.").

11

Somatoform disorders are defined as "[p]hysical symptoms for which there are no demonstrable organic findings or known physiological mechanisms." 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.07. To establish disability under §12.07 pertaining to somatoform disorders, a claimant must meet or equal the criteria of both §§ 12.07(A) and (B). Winbush v. Comm'r of Soc. Sec., 2013 WL 4678377, at *2 (N.D.N.Y. Aug. 30, 2013)(citing 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.07). "The criteria in paragraph A substantiate medically the presence of a particular mental disorder. Specific symptoms, signs, and laboratory findings in the paragraph A criteria of any of the listings in this section cannot be considered in isolation from the description of the mental disorder contained at the beginning of each listing category. Impairments should be analyzed or reviewed under the mental category(ies) indicated by the medical findings." 20 C.F.R. § Pt. 404, Subpt. P, App. 1. "The Paragraph B criteria are identical for anxiety disorder and somatoform disorder, and require a claimant to show at least two of the following four functional limitations: (1) marked restriction of activities of daily living; (2) marked difficulties in maintaining social functioning; (3) marked difficulties in maintaining concentration, persistence, or pace; and (4) repeated episodes of decompensation, each of extended duration." Rock v. Colvin, 628 F. App'x 1, 3 n. 1 (2d Cir. 2015)(citing 20 C.F.R. Pt. 404, Subpt. P, App. 1 §§ 12.06(B), 12.07(B)).

Plaintiff argues that she meets the "A criteria for Somatoform Disorders – She has unrealistic interpretation of physical signs or sensations associated with the preoccupation or belief that one has a serious disease or injury. She has consistently reported her diverse perceived physical problems." Pl. Mem. pp. 30-31. She asserts that "none of the treating or consultative sources doubted that [she] experienced pain. She was constantly reporting various physical ailments. She received numerous radiological and other objective tests

regarding her complaints. Many of the tests were normal. Despite this, no provider has ever doubted her sincerity. Her treatment is consistent with her belief in her purported physical ailments." Id. p. 30. She further maintains that the "same 'B' factors exist under Listing 12.07 as for Listings 12.04 (depression) and 12.06 (anxiety)." Id. p. 31.

The Commissioner argues that the ALJ properly found that Plaintiff did not have a severe somatoform disorder because, if it existed, it did not significantly limit Plaintiff's ability to perform basic work activities. Further, the Commissioner asserts that while school psychologist Nicole Matthews reported that she was treating Plaintiff's family and stated that Plaintiff displayed somatizations, she did not provide any treatment records or mental status findings with respect to Plaintiff's mental condition. The Commissioner further notes that, in all other respects, the medical record contained no formal diagnosis or clinical finding of a somatoform disorder. Finally, the Commissioner asserts that Plaintiff did not meet the paragraph B criteria for §12.07 for the same reasons that she did not meet the paragraph B criteria for §12.04 or §12.06.

> Addressing the possibility of a somataform disorder, the ALJ wrote:
>
> In July 2013, school psychologist Nicole Matthews asserted her belief that some of the claimant's physical complaints, such as headaches, sleeplessness, and aches and pains, could be the result of somatizations secondary to mental impairment. However, Dr. Matthews did not provide any justification for this assertion, the claimant has no diagnosis for somatoform disorder, and the claimant curiously requested that Dr. Matthews not release her case notes as part of the claim for disability. As such, there is no evidence of Dr. Matthew's treatment and no evidentiary support for Dr. Matthew's assertion. These factors undermine an assertion of somatoform disorder. I also note that the claimant's refusal to authorize release of treatment notes weakens her argument of disabling mental impairment, as she has an otherwise weak treatment history in that regard, discussed below.

Tr. 48.

13

A review of Ms. Matthews'[7] letter explains that she has been working with Plaintiff and Plaintiff's two children one time weekly, initially having been assigned because Plaintiff's husband's incarceration caused Plaintiff difficulty in raising two children with disabilities. Tr. 1176. Ms. Matthews' letter indicates that Plaintiff reported very traumatic and unstable upbringing with multiple instances of physical, emotional, and sexual abuse, past abusive relationships, suicide attempts, and recurrent depression. Id. Ms. Matthews further indicates that Plaintiff "has a long history of mental health diagnoses including depression, PTSD, and anxiety. These paired with raising two disabled children has proven repeated [*sic*] to overwhelm [Plaintiff]." Id. Ms. Matthews opines:

> Rhonda reports frequent bouts of depression and anxiety in dealing with typical life situations, such as getting groceries and participating in community activities with her children. She does possess a NYS drivers license, however rarely drives. Clinical impressions indicates that she displays many somatizations, in the form of headaches, sleeplessness, aches and pains. Rhonda reports that although she gets medical attention for these issues, the doctors cannot find any medical reason for her symptoms. It is likely that a great deal of her physical complaints can be explained by her psychological issues being unresolved.

Id.

Ms. Matthews concludes by indicating that "[d]ue to the nature of other issues being discussed during counseling sessions the client has requested the case notes not be released. Additionally, it is a breach of my confidentiality agreement to release any notes against client request. " Id.

Due to the sensitive and personal background information apparently provided by Plaintiff to Ms. Matthews, it is understandable that Plaintiff would not want the complete

---

[7] Ms. Matthews indicates in her letter that she has a Masters of Art in Psychology and a Certificate of Advance Study in School Psychology. There is no indication that she has a doctorate degree.

14

record of her counseling sessions with Ms. Matthews to be disclosed for purposes of determining whether she was disabled under the Social Security Act. However, Ms. Matthews' letter raises the possibility that Plaintiff's long history of seeking medical attention for a sundry of pains and migraine headaches without medical diagnoses is attributed to a somatoform disorder. Indeed, when Plaintiff's medical history is combined with Dr. Frank's opinions expressed in his post-hearing medical source statement (which the Court has already determined the Commissioner must consider in the context of the evidence presented in this matter) and Ms. Matthews' opinion that Plaintiff "displays many somatizations, in the form of headaches, sleeplessness, aches and pains," the potential is created that (1) Plaintiff is suffering from a severe mental impairment that significantly limits her ability to perform basic work functions, see 20 CFR §416.921(a), and (2) satisfies the paragraph B criteria for § 12.07 of the Listing of Impairments (Somatoform Disorders). This evidence is sufficient to trigger the Commissioner's obligation to investigate further and, if necessary, to order a consultive examination addressing this issue. See Goodwin v. Colvin, 2014 WL 2176426, at *5 (N.D.N.Y. May 22, 2014)("[B]ased on Goodwin's treatment history, diagnoses, and the opinions of his treating and examining sources, the ALJ should have more thoroughly considered whether there is a psychological source of Goodwin's pain. Thus, on remand, the ALJ should obtain expert opinion on this issue.")(citing Carradine v. Barnhart, 360 F.3d 751, 756 (7th Cir. 2004)(holding that remand for further administrative proceedings was appropriate, "utilizing whatever body of expert opinion, scholarly or otherwise, may be available to [the ALJ] or within the institutional memory of the Social Security Administration," where the ALJ improperly concluded that a somatoform disorder did not result in real pain)).

Accordingly, the Court remands on this basis and directs the Commissioner to amplify the record to determine whether or not Plaintiff suffers from a somatoform pain disorder.  See Sims v. Barnhart, 442 F.3d 536 (7th Cir. 2006)(court remands for amplification of record regarding "Somatoform Pain Disorder."); Prentice v. Apfel, 11 F. Supp. 2d 420, 427 (S.D.N.Y. 1998)("[I]nsofar as Plaintiff moves the Court to remand for amplification of the record on the limited issue of whether Plaintiff is disabled by depression or Somatoform Pain Disorder, Plaintiff's motion for judgment on the pleadings is granted."). If it is determined that Plaintiff suffers from a somatoform pain disorder, the Commissioner should first determine whether the condition meets or equals a § 12.07 Listing of Impairments, and if such a condition exists but is not a Listing level impairment, articulate the impact the condition has on the Commissioner's assessment of Plaintiff's credibility. Nelson v. Comm'r of Soc. Sec., 2015 WL 3936939, at *5 (N.D.N.Y. June 26, 2015)("The ALJ's failure to explicitly consider, or even mention, Plaintiff's somatoform disorder in his credibility determination warrants remand.");  Goodwin, 2014 WL 2176426, at *5; Tricic v. Astrue, 2010 WL 3338697, at *8 (N.D.N.Y. Aug. 24, 2010)("Although a somatoform disorder does not insulate a claimant from an ALJ's credibility finding, it should be considered. Accordingly, on remand, the ALJ should consider Plaintiff's somatoform disorder in connection with any credibility determination.")(internal quotation marks, brackets, and citations omitted); Frank v. Chater, 924 F. Supp. 416, 429 (E.D.N.Y.1996) (remanding action for amplification of the record because "[n]otably absent was any substantial inquiry into the nature of [Plaintiff's] impairments or their effects on his ability to work.").

### c. Whether the ALJ erred by failing to re-open Plaintiff's previous SSI application

At the hearing, Plaintiff requested that the her previous application for Supplemental Security Income, dated September 18, 2009, be re-opened. The record reflects that Plaintiff was paid benefits into April 2010. However, in an initial determination, purportedly dated April 20, 2010, Plaintiff was found to not be disabled. Thereafter, the Social Security Administration sought recovery of benefits paid prior to the final decision, but in a letter dated February 7, 2011, Plaintiff was informed that the Administration would no longer seek repayment of the funds although the initial determination stood. Tr. 238

The ALJ found that (1) because Plaintiff's initial determination of non-disability was dated April 20, 2010, (2) she did not apply for a hearing on the initial claim, and (3) she did not submit a new application until May 15, 2011 (more than 12 months after the initial determination), she did not qualify to reopen the previous matter under 20 C.F.R. §416.1488 (a) ("A determination, revised determination, decision, or revised decision may be reopened—(a) Within 12 months of the date of the notice of the initial determination, for any reason."). The ALJ also found that there was not good cause to reopen the application under 20 C.F.R. § 416.1488(b),[8] holding that that Plaintiff "has submitted no new evidence material to the period in the initial application, neither she nor her representative has asserted any difficulty in filing a timely request for hearing in the initial case, and, pursuant to SSR 91-5p, I find no evidence of mental incapacity resulting in good cause for missing

---

[8]Section 416.1488(b) provides that "[a] determination, revised determination, decision, or revised decision may be reopened— (b) Within two years of the date of the notice of the initial determination if we find good cause, as defined in § 416.1489, to reopen the case." Section 416.1489 provides in pertinent part: "(a) We will find that there is good cause to reopen a determination or decision if—(1) New and material evidence is furnished, or ... (3) The evidence that was considered in making the determination or decision clearly shows on its face that an error was made." 20 C.F.R. § 416.1489(a)(1), (3).

17

the deadline to request review." Tr. 45.  Thus, the ALJ denied the request to reopen the

prior application.  Id.

>Plaintiff argues:

>[A]fter first being approved, Ms. Gribensk received notice that her first claim for SSI was being denied on August 13, 2010 (R: 233). She reapplied within the one year period on May 24, 2011(R: 45). In any event, both the original evidence and the new and material evidence shows that she was disabled as of the date of her first application (on or about September 18, 2009)(R: 146).

Pl. Mem., at 50.

The record reflects that on August 13, 2010, the Social Security Administration sent Plaintiff a notice indicating that she was paid "$4182.00 too much Supplemental Security Income money.  The overpayment happened 10/2009-05/2010. You were paid for disability benefits prior the a [*sic*] final decision on your case. Therefore you were not due those benefits."  Tr. 233.  While the record also reflects that the Social Security Administration, through a Request for Corrective Action dated April 10, 2010, decided to issue an initial determination denying Plaintiff SSI benefits, Tr. 301, the Request for Corrective Action is forward looking and does not appear to constitute the actual decision.  Rather, this document states on page 2: "REQUEST FOR CORRECTIVE ACTION: Incorporate the findings of the RMC and RMA.  Modify the final RFC as indicated. Prepare a new SSA-831 and prepare an applicable denial notice. When finished, return jurisdiction of this claim to the OQP in Kansas City, MO.  Thank you."  Id.  The Commissioner has not indicated where in the record the actual denial exists, or the date on which it was sent to Plaintiff.  Without this information, the Court cannot determine whether Plaintiff's application to reopen her prior determination was made within one year of the date of the denial as required by 20 C.F.R. §416.1488 (a).  Likewise, Plaintiff's broad conclusory allegation that "the original

18

evidence and the new and material evidence shows that she was disabled as of the date of her first application (on or about September 18, 2009)," without more, is insufficient to satisfy the good cause requirement of 20 C.F.R. §416.1488(b) and trigger a two year period in which to reopen a matter. Accordingly, both parties' Rule 12(c) motions on this ground are denied, and the Court commits this issue to the Commissioner for further fact finding on remand.

### d. Remaining issues

The remaining issues raised by Plaintiff may be affected, or rendered moot, by the Commissioner's determinations on the first two issues discussed above. The Court finds it would be a waste of judicial resources to issue rulings on these matters at this time. Accordingly, both parties' Rule 12(c) motions on Plaintiff's remaining issues are denied with leave to renew before the Commissioner.

## VI. CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings is GRANTED in part, and the Commissioner's motion for judgment on the pleadings is DENIED. The decision of the Commissioner is REVERSED and this case is REMANDED, pursuant to sentence four of 42 U.S.C. § 405(g), for a determination consistent with this Decision and Order.

**IT IS SO ORDERED.**

Dated: September 20, 2016

Thomas J. McAvoy
Senior, U.S. District Judge

19